The case of the afternoon is 410-0715, Cornerstone Bank and Trust v. Consolidated Grain and Barge, for the appellant, Mr. Thibatt, and for the appellee, Mr. Cochran. You may proceed. May it please the court and Mr. Cochran, this is an appeal by Cornerstone Bank from an adverse ruling on a motion for summary judgment. As I've outlined in the brief, it appeared that the trial court was confused as to the technical terms in the UCC, particularly in regard to priorities and perfection of security interests. With respect to this case, it's actually the second case, factually, to come before this court on an offset of grain taken by Consolidated in January of 2009, the first case being brought by a landlord who was deprived of a landlord's lien and the court determined in its favor. The only difference of Consolidated's part is the way that they are approaching the defense. In that case, their argument was that they were collecting a debt pursuant to both a contractual and a common law right of offset, and that they had a right that the applicable law was first in time, first in writing. In this case, where there clearly is no argument but what Cornerstone had a prior security interest, the argument is somewhat different, that they're not willing to call themselves a creditor, they're not willing to call this a debt, saying that they have a right of set-off. It's unclear just then what right they did have to grab the grain. The significant thing is that they've taken the grain to apply it against defaulted grain contracts of Mr. Bierman, a customer of both the bank and of Consolidated. They have cited both Section 1631 of the 7 U.S.C. Food Security Act and also Section 320F as the basis for their defense. With respect to both of those acts, it is very clear that those acts which do not set up, as they argue, an additional type of priority position of a secured creditor, the only thing they do is they allow a buyer in the ordinary course of business to take free and clear of a prior perfected secured beanholder, where that buyer is in jeopardy otherwise of paying twice for the same goods. Of course, this is a situation where they cannot claim that innocent buyer or that jeopardy of paying twice because they have set off the money against a prior pre-existing debt or claim that they have against Mr. Bierman. But the bank never complied with Section 1631, did it? Well, it is our position that it did not have to comply. So I guess the answer to my question is yes. It's probably correct because it appears that that's a very technical application of the notice requirements and the bank's notice did not meet those technical requirements. My technical requirements mean the requirements that Congress imposed precisely to deal with questions like this where grain people are buying grain and are not going to, Congress is concerned, don't have to buy it twice. No. Situations where in fact grain dealers are, yes, buying grain, but not situations where they're acting in a dual capacity as both a secured creditor collecting a debt and a grain purchaser. And all of the cases cited by me in my brief have indicated that where there's no fresh consideration or new consideration given for purchase of the grain, that in fact they simply don't meet the qualifications or the stepped up status of a buyer in the ordinary course of business, which is the situation here. But if they just purchase the grain, then the bank loses, right? I think that's correct. But as long as they had established some other kind of way to, agreement to pay for it, then the bank wins. As if the bank has an interest or cares how consolidated buys the grain. Well, I'm not saying that either. I think if they'd given, for instance, securities in exchange for the grain, something like that, then those securities or whatever that consideration would have, the bank's lien would have attached to it. The bank would have been protected. The problem is they didn't give anything for it. They simply offset against it. So had the bank done what the statute requires, the bank wouldn't be out the money, would it? Well, it perhaps wouldn't be out the money if it... I mean, consolidated then would have taken it subject to the bank's lien. Except that, from prior... I mean, so once, you know, if this seems harsh for the bank, then one response might be, well, you're in the business of loaning money on all this stuff. Why don't you just protect your liens as required by statute? You have no beef. Wouldn't that be correct? Oh, I think that's probably correct, yes. I also think it's correct that as another secured creditor, which clearly consolidated was, then, I mean, they had the same obligation to perfect their security. Well, no, not... You know, the way it works is you could protect your lien, and if you didn't, they could just take the crops. So if Mr. Bierman was going under, which he was in this situation, he could basically take his crop and give it to somebody else in order to try to prioritize... Well, then somebody else could have bought the crop, couldn't they? I mean, there's no... I thought we established that earlier. If consolidated had said, here's $100,000 for your crop, no problem. So the banks hold the fences. Well, they didn't really do that. They constructed some kind of stuff that you owe and whatnot, and that transaction we consolidated in the Bierman's was different than if they consolidated and just paid them cash. Therefore, we win. Does that... have I summarized the case reasonably well? I think so, yeah. It's not an appealing case, counsel. Well, what's interesting is that, in fact, when they did pay cash for the grain to Bierman in the prior years, each time they made out a check to Bierman and to all the secured creditors, including Cornerstone Bank. But isn't that a double-edged sword? They did that because the creditors were secure. This time, the bank wasn't a secured creditor, so it's a double-edged sword that maybe the grain company could think, there's no secured creditor this time. Well, I think that's an error. I think the bank was a secured creditor by its perfected interest. It's just a question of, could it defeat a buyer in the ordinary course of business by giving the appropriate notice? I don't think it could have defeated a buyer in the ordinary course of business because the notice didn't have a county and didn't have other information required. But nonetheless, consolidated was not a buyer in the ordinary course of business. They're asking for the relief granted only to a buyer in the ordinary course of business. They just don't fit that status. Doesn't the federal statute govern here? Yes, and the federal statute, in fact, is premised on consolidated being a buyer in the ordinary course of business to get relief. Even the sole case cited by consolidated in this case was one in which the case very clearly indicated that it involved a buyer in the ordinary course of business and then applied the notice provision of Section 1631E in order to say that the notice wasn't sufficient in that particular case. It simply is inapposite to this particular factual situation. The entire argument that I understand of consolidated is that it is unnecessary to be a buyer in the ordinary course of business. They can simply be a buyer of grain or farm products in order to take advantage of this taking free of a prior protective security interest. That simply is not how either statute reads. It wasn't intended by the federal statute, which was intended to protect simply a buyer who is in jeopardy of paying twice. The Illinois statute adopted the federal statute. There's no indication in the Illinois statute, which adopted the federal statute, that they intended to carve out yet an additional remedy for a buyer who was not a buyer in the ordinary course of business. So it's the position of cornerstone bank runners that the case must be reversed. Thank you. Thank you, Ken. Thank you. I'd first like to pick up on something that Justice Stegman brought up, and I fully agree with him. The result in this case is not harsh. The plaintiff was a sophisticated commercial lender operating in a rural farm community in Illinois. You're familiar with farm financing practices. They do it all the time. They had access to a notice form that was developed by a national banking organization to comply with the notice requirements of the Federal Food Security Act, as well as the Illinois UCC. For whatever reason, they didn't properly complete that. There are blanks on there with specific headings for the county and the property description. It was left blank for whatever reason. But in this case, it is particularly inexcusable because the notice was dated July 18, 2008. Less than three weeks later, they obtained a default judgment against their borrower for defaulting on his loans for financing his farm operation. So obviously, less than three weeks earlier, they knew this borrower was in serious financial situations. Yet when they filed their notice, they didn't do it properly. At that point in time, you certainly would expect that they would have taken every step to make sure they ensured the priority and security of their lien. But they didn't. To me, that's inexcusable, and they have to suffer the consequences of that. What about his argument that you're not really a holder in due course, or however he put it, because you didn't pay cash, you had this transaction that existed instead? I think one thing I would disagree with, the Food Security Act has its own separate definition of buyer in the ordinary course. It doesn't adopt Illinois' UCC definition. The federal statute. The federal statute. It has its own. It doesn't include a good faith requirement. It doesn't include the exclusion for taking in satisfaction of a buyer. What does it have? It just says a buyer, essentially if they purchase in the ordinary course of business. Is that you? Yes. And I think this was very ordinary. As you may well be aware, farmers and elevators, typically they buy and sell on the spot market, or they buy and sell under forward contracts. A lot of times a farmer will sign X percent, I want to lock in for the forward contract. And in those contracts, which are thousands of them, consolidated grain enters into thousands, it's part of the boilerplate language in there, provisions that allow them to offset. This is just a normal transaction. The farmer brought grain to the elevator, he sold it. The elevator had a potential claim against him on another contract, and they offset it according to their contract. That's a normal course of business. So it's your position that this is contemplated within the Federal Act? You're a buyer within the Federal Act. Correct. And as far as, they gave value because they, by credit for this potential contract claim, they're weight, I mean they're canceling that out. I suppose also, looking at it, I didn't quite understand from the point of view of the bank how they have an interest anyway. Of course, it's the other side. If you paid $60,000 in cash, or you paid $20,000 in cash, and offset $40,000, the buyer wins over. Is that what happened? Right, because the elevator didn't recover, I mean, what they offset didn't fully recover the damage. So part of it's still out there. Of course, the farmer's bankrupt now. Bad timing by the farmer, the way Corning's going. Yeah. Well, worse timing by the bank for not properly filling out the notice. Well, that's true. So, I really, as far as, let's try to reference this court's prior ruling in Steckel. Really, they're apples and oranges. Steckel involved an issue between a landlord's lien on the Code of Civil Procedure and a common law or contractual right of offset. It had nothing to do with the UCC and secure transactions. And there, the court determined, our argument was that it's not covered by the UCC. You need to look at common law first in time, first in writing. And the court determined that the landlord's lien was prior in time, so they won. It had nothing to do with the UCC and really has no application to this case. No application of the Food Safety Act? No, that was not raised in the case. And as far as the prior years that Mr. Tyler brought up, the notice requirement is an annual one. It has to be repeated every year to protect that year's lien and that year's contract. So what about his argument you were on notice? It doesn't matter whether you have actual notice or not. If you don't comply with the notice provision in the Food Security Act or in Section 320F, the bank loses. How much money is at stake here? About $27,000, I think. So if the bank had done what it should have, they protected $27,000 worth? Right. Part of the offset was about $47,000, but in the prior case, Steckle, the landlord's lien had priority over everything and they've gotten paid, so that part of the offset is gone. I just briefly touched on the federal preemption. We would not have appealed it and not selected to appeal the trial court's decision on the state level. We think the statute, the federal statute, clearly uses the typical language for preemption. Counsel, that's strange, by the way. You purport to be a cross-appellant? You don't want us to affirm what the trial court did? Right. Now, if there's different reasons we can do that, if the record supports it, you want to be a cross-appellant if you want us to change the decision. Ideally, we'd like an appellate court decision to say, yes, the federal law preempts. But we were satisfied with the state ruling, and we still are. But just for style points, we review judgments, not the reasons for it. And you won below. So if your prayer is affirmed the trial court's judgment, then you're really not a cross-appellant. Sorry for that mistake. Under what section of the code did you file a cross-appeal? Did you file a cross-appeal? The intent was we thought we were appealing. Did you file a cross-appeal? Yes, it was style. And you paid the fees? Yes. Any further? I don't have anything to say. Thank you. Thank you. Rebuttal? Yes, just briefly. Well, the Food Security Act really does not define what a buyer in the ordinary course of business does. It does not define what a buyer in the ordinary course of business does. Other than to say that a buyer in the ordinary course of business is one who buys in the ordinary course of business. It just repeats itself. But the cases all appear to look to Section 201, Subsection 9, which defines a buyer in the ordinary course of business, not only in Illinois but throughout the United States. The definition is… This in the UCC? Yes, sir. It's practically the same throughout the United States. One thing that Mr. Cochran said was that offset is something done in the normal course of business, but that is clearly not accurate. In the normal course of business, a grain buyer pays cash for grain. This was a situation where, in fact, Consolidated took this grain and withheld the proceeds, even from a landlord, after the attorney for the landlord gave notice, or for Mr. Bierman gave notice that he had outstanding landlord liens, and they wanted the liens paid out of this money. That was the earlier case, wasn't it? It was, but it nonetheless shows that it wasn't… It was all part of the same transaction. It wasn't a transaction in the ordinary course of business. But that was a lien that was predictable, first in time and all kinds of other things. Right. And Consolidated lost. Right. They got greedy. That's right. And this is one in which the argument is that Consolidated gave value. The problem is the section of the statute that they're citing for the definition of value is one that describes value that supports consideration for a contract. It's not one that supports value in terms of a buyer in the ordinary course of business. And for that, you have to look to 2019, which says that you cannot pay an existing debt and be a buyer in the ordinary course of business. You're not giving the kind of… So Congress just forgot, is the draft of the Food Safety Act, to include that limitation? No, I think Congress intended to… It's not in the Act, is it? Well, buyer in the ordinary course of business is. And it's just a matter of looking up the definition. Now, the language you've – the limitations you cite from the UCC is not in the Food Safety Act. The definition is not, that's correct. The limitation that you want us to apply. Buyer in the ordinary course of business, it is in the Food Safety Act. About being able to use prior debt? That's a UCC provision. It's not in the Food Safety Act, though, is it? No, that's correct. I'm referring to the UCC, which defines buyer in the ordinary course of business. But if we think the Food Safety Act governs here, why does consolidated not win under the Act? Because the preamble of the Food Safety Act makes it very clear that that statute is to protect one who is in jeopardy of paying twice, not a person who is simply collecting on a preexisting debt. Thank you. Thank you. We'll take the matter under advisement.